May I please report? It is our contention that this case is controlled by the decision in the decision. In what attempt? Jean v. Barnhart. The ultimate holding at the end of the case is, and I quote, Congress intended the Egypt to cover the cost of all phases of successful litigation. The district court thought it could divide this case into phases, and we think it departed from the central holding in Jean in that regard. Now, even under Jean, if the district court were to conclude that the litigation over fees was justified, it doesn't have to pay you for that, presumably. You're still the prevailing party, et cetera, but they can use their discretion to figure out how much you're owed, correct? I think maybe there are two questions there. The answer to the first one is no. The central holding of Jean is that if the government's underlying position on the merits was not substantially justified, that's the end of the inquiry. What I'm asking is how do they decide what is a reasonable fee? I'm with you so far. You're entitled to a reasonable fee, but in deciding reasonableness, can't the court then take into account whether or not you prevailed on some of the fee issues and so on and so forth and adjust the amount of reasonable fee according to how things went at various phases of the litigation? I think, again, it's two questions, and the answer to the first one is no, but the second one is yes. If you're asking whether the court could award a lower fee because the government's position on the fee litigation was reasonable, I think the answer is no. They could not do that. That's exactly the argument we advance to. But in that regard, this case does seem somewhat different for many of the reasons that you were talking about in your briefs, which is that the here, the 406B question is essentially, it seems to me, part of the merits of the case. In other words, as you stressed, the ultimate judgment encompasses the benefit decision and the 406B allocation. Right? Yes. So why isn't it more helpful to look at this case, the substantial justification question, as going to the case as a whole, i.e., the benefits decision and the 406B allocation decision, and thereby determining whether that was substantially justified and what reasonable fee was expended on that? Well, I think the core holding of Gene is that once there was a substantial justification for the government's position on the merits, the denial of benefits to Mr. Gisbride, we are done analyzing substantial justification. And what I'm saying is I'm not sure the analogy holds perfectly to the 406B question. That doesn't necessarily determine the result as to — it doesn't support the government's position either. You don't chop the fees off at that point and look at the substantial justification separately on the fees issue. But it also doesn't lead to the conclusion that the substantial justification on the fees issue is entirely irrelevant. It may be relevant, although it may not end up mattering because the merits is more important. I'm suggesting some middle ground analysis that's somewhat different than what you said. It's a plausible position, but I think it's not the position the Court took in Gene. But I mean, I share the concern that Judge Prezant's raising that, I mean, Gene didn't involve 406 fees, right? No. So in a sense, I mean, we have to make a choice. We either are going to extend Gene to something it didn't cover, or we're going to limit Gene and make up some new rule which might be favorable to you or the other side relating to 406. Well, I think those are — But we can't just say — I mean, I realize you should argue Gene covers it, and your opponent should argue Gene doesn't. But really, we can't just say, oh, well, you know, Gene's got it covered. Why are we here? Well, I think that the rationale of Gene reaches this case for a couple of reasons. First, the Court's view in Gene was that there should not be multiple determinations of the reasonableness of the government's position. And the Court noted that if that were the case, you determine the reasonableness of the position on the merits, then the reasonableness of the position in the litigation, then the reasonableness of the position on litigation for fees, then the reasonableness of their position on litigation for fees for the litigation of the fees. They said once is enough. We're going to stop with the merits. But I think there's a broader reason why Gene should apply here. We believe that the core purpose of Congress in adopting Egypt was to assure that — a particular rule for cases in which the government's underlying decision on the merits lacks substantial justification. And the purpose of Egypt was to assure that the individual affected with access to the courts because their lawyer would be paid for, not paid for part of the work. Because if you only pay for part of the work, you won't necessarily get a lawyer. You have to basically pay for all the work that then follows in that litigation. And if you cut back on that, then you affect access. One of the things the Court said in Gene, it was not a problem there, but is clearly a problem here, is that there will be cases in which the amount of expense and time that goes into the fee litigation is substantially greater than the fee itself. And that's why we need fees for fee litigation. Otherwise, the underlying right to fees will be worthless in the case where it would cost more to seek the fees than the fees themselves. But in that case, in Gene, the money is coming from outside the system, right? And here the money is not coming from outside the system. We're moving the money around within the system, right? So it's being eaten up, you're right, but it is being eaten up, arguably, at the expense of the client. Now, that doesn't bother me that much. But it doesn't bother me that much when I think about the whole case as being a single case in which the fees and the benefits have to be determined in order to be finished. But the analogy, again, doesn't work very well, because the money is not coming from outside the system. I want to ask the same question in another way, because it seems to me that ultimately there's kind of a, not literally a conflict of interest, but there is a conflict of economic interest here that was not present in Gene, because you have sort of a zero-sum game. Well, let me address that. The government makes a somewhat broader argument. Let me just focus on that for now. Mr. Gisbrecht's interests are not as narrowly circumscribed as the government suggests. Mr. Gisbrecht was severely disabled. He'd been on Social Security. He was cut off. He got a lawyer, was able to get back on. Now, if the government prevails, we will go to Mr. Gisbrecht with the following account. We say we've got good news and bad news. The good news is you've got $3,000 more. But the bad news is you may not be able to get a lawyer if they cut you off again, because if the cost of litigating the fees is going to be greater than the fees, a lawyer will look at the case and say it's just not worth the risk. This is one of those cases. This is a case, I mean, on the government's view of what the hours are that would be appropriate here. We disagree about some details. The government's view, this is a case in which the underlying fees were about 200 hours. The litigation about the issue that was before you earlier totaled, on the government's views of the appropriate fees, $800. There are, the net award in this case on the government's view would be $28,000, of which about $9,000 is costs. So the total award is about $19,000 for over $1,000 worth, 1,000 hours worth. That's about $19 an hour. Lawyers won't take a case at $19 an hour. So from the point of view of Mr. Kisbreg, he may have been out $3,000, but the viability of this system, one in which a lawyer can take a case reasonably confident that they'll get paid enough to make a living. I think that argument is very well put and goes to the issues about whether they're prevailing parties and so on. It doesn't necessarily deal directly with the question of whether we can take gene as written, ignore the fact that the money is being moved around within the system. In other words, it responds to many of the government's arguments, but it doesn't necessarily respond to the exact analogy to gene. It's a little bit different. I guess our view is the difference doesn't affect the outcome. But the government's arguments against applying gene here are considerably more expansive than the more limited question that you've raised, and they really go to the vitality of gene in Social Security and, indeed, in other cases. For example, the government's view is that EJA does not apply unless the client benefits from the fee award. Well, most of the time, clients don't benefit from fee awards. Remember, the holding of gene is under EJA. You get fees for fee litigation. The government's view is, oh, yes, gene means that unless the client didn't benefit from the fee award. Well, clients almost never benefit from the fee award. This we don't know in gene. We don't know what the deal was in gene. We don't know whether the client was going to have to pay if there was no EJA award or didn't. Well, actually, in gene, the lawyer was the Haitian Immigrant Resource Center. Well, we mean. Presumably it would have come out the same way. We can be fairly confident that they were not going to be. But we can be fairly confident, too, that even if there was a deal to pay them, it still would have come out the same way. It didn't matter. Right. But what I'm suggesting is, as a practical matter, there's a substantial body of EJA cases in which the client does not benefit from the fee award. Because of the terms of the fee agreement? Is that why or for some other reason? Like the client could have a fee agreement that says, I'm going to give my lawyer X percent of any recovery, plus if there's a recovery of fees, the lawyer gets it all. Sometimes it could be the contrary, but sometimes it happens by operation of law. And that's true in a lot of Title II Social Security cases, which are a very substantial portion of all EJA cases, which is why this issue is so important. In many Social Security cases, the same lawyer represents the claimant in the administrative process and in court. And the fee agreements typically are for 25 percent. An EJA award for the court work is only a set-off against a 25 percent award or a fee award against the client in court. But if the lawyer is already getting 25 percent or whatever, we understand that it's a little more complicated than that, because of the administrative representation, then there's no separate award simply for the work in the court, and there's no set-off. All the EJA money goes to the lawyer. And so in any case, or most cases, in which the claimant was represented by the same lawyer in the administrative process and in the judicial proceeding, all the EJA money goes to the lawyer by operation of law. And on the government's views, you couldn't get fees for fee litigation, and Gene would not apply. And a large portion of actual cases under EJA, Gene would become inapplicable. Let's assume we tell the government they're wrong about that, that Gene applies to that. That still doesn't answer whether it applies in this 406 context, right? Yes. You could certainly frame a narrower rule. Our view is that the statute, that Gene applies to 406B claims, at least in general, despite that, partially because of the rationale I gave you for what we think the purpose of EJA is, but also because of the text of the statute. If you were to hold, I mean, I assume you can't read the statute to hold that EJA is never, fees are never available for disputes under 406B. And if that's right, it would apply even if the government's position had no substantial justification. The statute, EJA itself, has a number of express statutory exceptions. EJA does not apply to disputes sounding in tort. It does not apply expressly to certain disputes under the Internal Revenue Code. I mean, the argument I gather isn't that it doesn't apply in the abstract. It doesn't apply in their arguing because it doesn't, because there are various factors that are necessary to establish EJA fees that don't have to apply here as an argument. Yes, but our contention is this. When Congress wanted to express, to remove a kind of claim from EJA, it did so expressly. It did so expressly as to tort. It did so expressly as to certain internal revenue cases. And then it began EJA with, except as expressly provided by statute. And Congress was well aware about 406B claims. This is where I'm having a problem, which is more of a problem about how we analyze this than how it comes out. Because as you talk, it starts coming back at me again, which is that you're asking for EJA fees on the question of how the money is distributed within the Social Security system. Right? And, therefore, to say that the statute resolves it is right because it's part of the merits of the case. It's really part of what we have to decide, always to decide a benefits case of this kind. Because there's always going to be a lawyer, and before you can get a judgment, you always have to do something with the fees, and there has to be a determination as to it. So you can't get in and out of court without deciding it. That is an easy, for me, an easier way to look at this than to look at it as a fees-on-fees question. It's really no fees-on-fees question. It's really a question of a fee for the merits of the case. Your Honor, on that rationale, as I understand it, we prevail and we would be happy. We're not wedded to our theory only to the result. But I guess it would be helpful to me not to know why you came in the other way and why it's preferable in some way because it's not. To me, I have a hard time understanding that rationale. Well, I think the best answer is probably we weren't as ingenious and creative as you were in your approach to this. I think that rationale works perfectly well. If you treat that as part of the merits, then we prevail there. You might want to save the rest of your time. Yes, I might. Let me raise a question, if I may, though, just to put this in perspective. I apologize. I probably should have made this in the briefs. But give me the order of magnitude of three things. The fees on the underlying initial resolution of the claimant's dispute, the fees on the appeal of that, on the direct appeal of that, that had to do with whether the claimant wins or loses on appeal, and third, the fees on the 406B dispute. I'm not sure there are three numbers here. Well, I guess they're all right. Originally, the district court, before the appeal that you heard, awarded approximately $15,000 in fees. That was using the lodestar method. Then, after we prevailed, the Supreme Court and the court, and the district court looked at this again under the new method of sanction by the Supreme Court, the court raised that to $28,000. The fee claim with regard to the 406B dispute is for approximately $190,000, of which $110,000 in dispute is to amount. That's the ---- But that's sui generis because this case happened to go to the Supreme Court. That's right. And it's more useful if we would think about what would happen tomorrow on the next case. I think the order of management of everything is probably about 10% of it. Typical claims are $3,000 to $5,000 for fees, and an appeal would obviously not be ---- If you had to litigate over a 406B claim, it would be substantially more than $3,000 or $4,000, but it wouldn't be $100,000 or $200,000. It might be $30,000. That's the order of management. Thank you very much. Thank you. Thank you. I'm going to ask you a question that relates to the colloquy that was just had. Opposing counsel is happy to win on any theory because they want fees. Judge Berzon is saying, as a practical matter, this case isn't going to replicate itself more than once every 25 years because that's about how often the Supreme Court seems to take a Social Security fee case. Does the government have much theoretical interest in this case? And if not, why isn't this a good candidate for mediation? Your Honor, I think that the theoretical interest that the government has in this is the same sort of theoretical interest that it had in other cases in which in the context of an overall case, that there are portions of the case that, in fact, are not comparable to the way in which Gene is set up. And so, I mean, it is – I'm not saying that in no way could something like this be beyond mediation, but I do think that the issue here, I mean, in some ways the fact is that this case is probably not going to be replicated and our position in this case is going to be different only because the fee litigation on the 406B issue here was such an – took a big chunk of time. And, in fact, the district court had this very strange reaction, which is that you could get – they could get the fees for the district court but not the appeal, which only reflects that it seems to be fairly routine that, in fact, each of fees are available for 406B in the usual case, which is you just sign it in the district court and that's the end of it. Nobody seemed to have a problem with that. That's true. The 406B litigation in this case is unlike – it's unlike the typical 406B litigation, which is about nonpayment of money or delays in payment. Right. And there's no suggestion in that case on the government's part that those fees would not be compensable under the sort of Gene theory. Well, why not? And how do you distinguish them? What's the difference? Because as this court in Gettysburg itself, and as the Supreme Court analyzed this case, what happened at the point which these attorneys started to fight over how the 406B fee was calculated, there was a shift in the sort of – Well, that wouldn't be true if it was a nonpayment dispute or anything else. Not in the same way, Your Honor. Here what the Supreme Court said was that these attorneys all of a sudden became the real parties in interest. It was no longer about their clients. In fact, the alignment of interest was against their clients because their clients, as the Supreme Court said, were going to get less money out of their pay. But that's not necessarily true. The clients enter into an agreement to pay them 25 percent and to help them get the fees. And as your opponent points out, this particular client has long-term interests in being able to get lawyers, and a class of clients has long-term interests in being able to get lawyers. And the government perhaps has long-term interests in not being able to get lawyers, so they can pay out less benefits. So who has what interest here is far from clear. Your Honor, there's certainly – the Congress has set up a system whereby it was going to attract enough competent lawyers to handle Social Security benefits cases, and it set it up in a way that it was going to be – it was going to allow the commissioner to take and keep up to 25 percent out of their past year's benefits to set that scheme up. Nonetheless, the Supreme Court said when it came to this particular case that the interests now were different, that the interests here were – the real parties in interest had switched to the attorneys. How would that be different than in each case like Gene if we knew that the agreement there, as it probably almost surely was, was that any money was going to the lawyers? The interest there is that the – what the lawyers are litigating on behalf of in an ordinary case, and in Gene is on – is an interest that is not divided against their clients. It's an interest of the lawyer. The divided party is nothing you've now added. But it's the lawyer's interest, right? Who's going to get the money in a Gene case? In the Gene case, I mean, that's another thing that is true, is that it is universally understood that in each of the cases, the attorney's fees belong to the client. Now, whether they could – Theoretically, but who's really going to get the money? Who's the real party in interest? No, that's an important distinction because although, in fact, most of the fees are going to go over to the attorney, it is true. But there can be a dispute, and in those circumstances, the dispute between the attorney and his client over the payment of fees is a dispute between those two parties, and it's much more analogous to a dispute that was at issue in this Gisbert case. And that's because the Supreme Court also said that the government's position in this case was much more like a trustee for the individual claimant. It said this in a footnote, and it was of no consequence to anything in the case. And to hang too much on it doesn't seem worthwhile. I'm not sure that that's appropriate because whenever you have a shift in the way – if you have a dispute between an attorney and a client, that all of a sudden is different from the underlying merits of the position that the lawyers are taking on behalf of the party. Whenever we're talking about how much money that lawyers are owed, that means that there is a shift in the direction of their interest. And whether – if the lawyers are going to get more money at the end of the day out of it – Let's go back to my earlier questions. Is it not the case that there cannot be a judgment in a Social Security case of this kind, that the judgment incorporates the question of, A, what benefits are going to be paid, and, B, what are the 406 fees so that they – and how that money is shifted around before there's a judgment? Is that right? Yes, as I understand it. Right. So why are we even looking at this as a fees question? Is it just a merits question, i.e., what are the benefits to be paid and then – What's the distribution of them? I'm not sure that I understand why this is really just a question of the merits – the underlying merits. The reason why this is different is the same as – is that while this issue is – You're trying to set this up as a separate – you're trying to separate out and say something has shifted, and now we have a different proceeding, in essence, which we should look at separately. Right. And I'm saying how can that be when you can't even get a judgment in one of these actions without making this decision? Your Honor, it seems to me that this Court has seen in other circumstances, like Love v. Wiley, that even – that there are portions of the litigation that ends up with a single final judgment in which the dispute that's going on is not the dispute over the judgment. That's where your paper began. This may all be a reason why in determining the reasonableness of the fees you might look at the substantial justification with regard to the fee issue and say, well, maybe they didn't win as much as they wanted on the fee issue in this case. They did. And you might do something with the fees on that. But it doesn't seem to go to whether they are a prevailing party or whether they did incur the fees and the various arguments that you've made. Your Honor, the analysis in Gene, which would be on the question of substantial justification and on prevailing party, that's what gets carried over and which is not that – why there's a single inquiry into those things and it doesn't change over the various phases of litigation. That's where we're talking about is the government's conduct toward the claimant. When that isn't true anymore in any phase of the litigation, it seems to me that to rely on the original prevailing party determination, to rely on the original substantial justification. But the question is when is the original. Judge Berzon's point is there is no original determination of who is prevailing until both the benefits and the distribution of those benefits have been determined. That is one single lump. And you look at that whole lump to decide who was prevailing and what justification there was or was not. Except theoretically the fee that is paid to the attorney under 406B comes after the determination of what the past due benefits are. So that you have actually a determination of the past due benefits. At that point, you know that the claimant has prevailed. And there's a determination afterwards as to... By definition, the claimant's lawyer has also prevailed. I'm not sure that I would see a... To some extent. How could the claimant who is represented by a lawyer prevail and yet the claimant's lawyer who got those benefits not prevail to some extent? I mean, you can fight over how much, but how could they have not prevailed? Well, they have prevailed, Your Honor. And to the extent that they get their fees out of the past due benefits judgment. But on the question now as to whether they are supposed to be paid... If I enter into an agreement with you, and it's to my benefit, this is sort of just plain old market theory, it's to my benefit to agree to pay you X. And the government comes along and says, I'm sorry you agreed to pay him X, but we're not going to let you pay him X. And then we have a whole lot of litigation, and the court decides, okay, you can't pay him X. Why haven't I prevailed? Well, it's unusual that in that circumstance, the government says you can't pay him X. But that's what happened here. That's exactly what happened here. And we're saying that you can't pay him X because the law that we're operating under, which is established by the court... So why haven't I prevailed if the ultimate decision is I can pay him X? Why haven't I, the plaintiff, prevailed? When I agreed to pay somebody a certain amount of money, and you, the government, is interposing the law to say I can't do it. Because that is not the basis of the litigation on which the party, in terms of getting each of these from the United States, has prevailed. The claimant does not prevail in the litigation on being able to pay the claimant's attorney a certain part of the thing, a certain portion of the fee. The claimant prevails against the United States, and that's why the agent is triggered on the merits of the claim. Now, Gene says that as a... Maybe they're choosing to chop it up that way. I'm saying, where is that choice coming from? I'm saying that we're talking about why is the government paying the Egypt fee? The Egypt fee is being paid because the government's position in the underlying case and in the litigation was not substantially justified. What is the conduct of the government that causes that? When we're talking about a dispute between... Resisting the client through the client's lawyer. So resisting them both. But as I understand it, the substantial unjustified conduct that gives rise to the fee claim under the statute and under Gene's is conduct towards the claimant, which was not justified. So the fees are awarded so the claimant will be whole, and then the fees are awarded on appeal because it's part and parcel of the same deal. And I am troubled. I don't know the final answer here, but I'm troubled by the idea that once you get into litigation about how the pie is divided up, we're dealing with something a little bit different. That it's not covered quite by Gene's. And I don't know whether there should be a separate substantially unjustified determination that would have to be made about that. Our position simply is that it's fine to go through the merits base of the case, the underlying agency position, the determination of the merits and fees for fees. That's certainly talking about government conduct toward the claimant, which is the basis for the use of redetermination. And we're talking about now a dispute that arises where the government is in fact has been called by the Supreme Court the client's essentially trustee for the client's position because in that circumstance the attorneys, which becomes the real party of interest, which is the Supreme Court and this court held. So that has to be a metaphor, doesn't it? It's not. Your Honor, I beg to differ. I don't think it's a metaphor. The real party of interest analysis is an analysis which goes on repeatedly in fee cases. Part of the reason why we're talking about that is whether the real party of interest really goes to who is incurring the fee here for purposes of being compensated. It can't be that these claimants are incurring fees with regard to their lawyers arguing in court for their getting less of the pot. That's why the real party of interest analysis is more than just. I've said it before. I'm not sure why that's so ridiculous. Twice. All I'm answering is that it's not simply a metaphor. It really is important to determine who is incurring the fees in this particular portion of the litigation. This court is held in. The other thing is that the lawyers here essentially are arguing that they are entitled to the fees in their own right and in their own names. They are not named plaintiffs. This court has also determined that even though real parties of interest, for example, in the Southwest Marine case, the real party of interest in that case was the subcontractor. It could not be a named plaintiff. Let me ask you a question. Which fees are they claiming they're entitled to in their own name? I assume that each of these are just like any other each of these. There are fees in the name of the client that are distributed. However, they may be distributed. Is that any different than Gene? No. They are arguing and they've argued in their own briefs that they are entitled by their own right to get each of these in the same way that they're entitled to get. That they have a right to each of these in their own name. You could fix that by saying it's not in your name, it's in the client's name. But what does that, why does that matter? Well, it seems awfully unusual, Your Honor, to have a client recovering attorney's fees against the United States when the entire conflict over which they are now receiving fees is not with regard to the United States but with regard to their own counsel. As I read the statute, each of these cannot be awarded except to the prevailing party, which I take to be a litigant party rather than who ultimately gets the money. So it would seem that that, at least the theoretical aspect of it, has to be the same, that it's always awarded in the name of the litigant. That it's always in the name of the party that has prevailed. It seems unusual, Your Honor, that part of the way in which the underlying claimants here have prevailed is by having more of their recovery from the government. Actually, if they get the fees, they will get more money, is that right? The clients will. If they get the fees for this. Yeah. Won't the clients end up getting more money then? Because there will be a reshift of the distribution under the position. In the ordinary course of affairs, yes, they would be able to offset the lower amounts against. So they really, it's not truly of no interest. They do have an interest. They will get more money this way. Clients. Clients will get more money for their. Because of the provision about the lesser, about the offset of the lesser amount. Now the interest fee won't be lesser. That will be the higher amount. Your Honor, the scooper said that they were going to, that the point is, I assume that that would be true if you viewed this as an undifferentiated whole. I have a question. Go ahead. I'm sorry. I'm sorry. I didn't mean to interrupt your response to Judge Prezant. If you're done with it, I have a question about footnote six. Yes. Okay. Footnote six. This is the one where the Supreme Court says the real parties in interest are their attorneys. And we've got some colloquy here about whether that's, you know, loose talk or does that mean something? We do have circuit law that says we're supposed to treat footnotes as presidential in the same way as, as we treat the text of an opinion, whether there's a Supreme Court footnote or our footnote. And that's problematical because sometimes footnotes don't get the same attention that, you know, the text does. But that seems to be the law. Of course, whether it's in the text or footnote, if it's a dictum or kind of an aside, we don't have to follow. So here when the Supreme Court uses a term about the real parties in interest being the attorneys, which has got a term of art normally in the law, is that a holding that's the law of the case? Or is that just kind of talk that we can, that we should view as a dictum because it wasn't litigated? I see they're citing Hopkins v. Cohen, which I haven't read. And I don't know if that sheds any light on this real party in interest question. Putting up one in this court's decision, which obviously that portion was certainly not overturned, makes the same observation that the attorneys are the real parties of interest. I also don't know of any circuit law, certainly outside of the circuit, in which the courts say that they are, that the courts are free to ignore which Supreme Court statement. It's even dicta that the Supreme Court states that courts of appeals are free to ignore that. If we say that that's kind of something we have to follow, and we have to view the lawyers in this particular litigation that went up to the Supreme Court as a real party in interest, how does that then square with the statutory language in the aegis? I think it makes it difficult to follow the statutory language in the aegis because they are not, if they are the real parties in interest, the only way that they are entitled to get attorney's fees under the aegis is if they are themselves a plaintiff. They are not plaintiffs in this litigation. They have to say whether the claimants that they're relying on have incurred fees on their behalf. They have not shown that they have satisfied the eligibility requirements for purposes of getting fees under their own right. And if this is, in fact, indeed because of this, a separate segment of the litigation, the same way that there was in Love v. Riley, then the government's position certainly was substantially justified in following this circuit's precedent on the determination, on the use of a lodestar amount as opposed to a payment. In this footnote 6 of the Supreme Court's Gisbret case where they make this real parties in interest statement, they are citing a Supreme Court case, Hopkins v. Cohen, and they cite, and I haven't looked at this particular page yet of that. I mean, does that address real party in interest? Do you know? Is that what they're citing too? I don't know for a fact. I think what it says is how, it's more about how. I really don't know. Okay. Thank you, Counselor. Your time has expired. And I believe you have a short amount of rebuttal still remaining. I'll try to use even less. You've had a long day. First of all, let me answer a question asked by Judge Berzon about the form of the request for fees in this case. It's at page 78 of the Fatter Record Excerpt. And it is not a request from the lawyers. It is, as it should have been, a request from the client. It says the plaintiff, the prevailing party, hereby applies. So this was in form of the right kind of motion. Let me respond to a question. How do you square the Supreme Court's real party in interest characterization in that footnote 6 with the EAJA requirement for fees that you'd be, I'm not, how do you square it with the EAJA? The description of the real, of the economic interest here is typical of EAJA cases. As I think I remember the Court pointed out, the Court could not possibly have meant to say that where the person who's going to get the EAJA money is the lawyer. EAJA doesn't apply and there can't be an award of fees. That's most EAJA cases. They can't have meant to say that. I mean, it's a loose characterization of who cares about it, but it can. It's any Social Security case in which the EAJA fees are more than 25 percent of the benefits, right? Sorry, say again? It's any Social Security case in which the EAJA fees would be more than 25 percent of the benefits. Well, it would apply in any EAJA case in which the named plaintiff wasn't going to keep some of the money or benefit from it to an office. That's most EAJA cases. By law or by their fee agreement. By law or by their fee agreement, right? It would largely eviscerate the statute. We don't think the Court meant to do that in a footnote. You can take footnotes seriously, but you can't find revolutionary scene change in the law in a term phrasing like that. Thank you. Thank you, counsel. The case just argued is submitted. Again, we appreciate some very interesting and well-presented arguments by both counsel. And we will be adjourned for this session. All rise. Court is adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Graber, Gould, Berzon